UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| KAI LEE, | Case No. 22-cv-00548-LB |
| Plaintiff, | |
| | **ORDER GRANTING SUMMARY JUDGMENT TO THE DEFENDANT** |
| v. | |
| STATE FARM GENERAL INSURANCE COMPANY, | Re: ECF Nos. 52, 54 |
| Defendant. | |

## INTRODUCTION

The plaintiff is a landlord who held an apartment-insurance policy with the defendant that provided coverage for, among other things, personal injury. The plaintiff was sued by a tenant for damages allegedly sustained from June 2012 to July 2019, including acute carbon monoxide poisoning in July 2019. That lawsuit settled for $1.2 million and the defendant funded only $300,000 of the settlement, contending that the policy contains an "anti-stacking provision" that limits the plaintiff to the policy limit for a single policy period where the injury is alleged to have occurred across multiple policy periods.

United States District Court
Northern District of California

The parties have each moved for summary judgment and they dispute mainly whether the policy has an anti-stacking provision.[1] The court grants the defendant's motion on the ground that there is such a provision and it limits the plaintiff to a $300,000 policy limit.

## STATEMENT

The following facts are undisputed.

### 1. The Insurance Policy

The plaintiff was insured under a State Farm apartment policy. "The policy Declarations reflect a $300,000 limit of insurance under Coverage L-Business Liability." The policy was first effective on August 23, 2015 and its policy periods renewed annually on August 23.[2] The policy's "Coverage L" for "Business Liability" provided that the defendant would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury.'"[3] An "occurrence" under the policy is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[4]

The "Limits of Insurance" provision provided that the most the defendant would pay "is the Coverage L - Business Liability limit shown in the Declarations for the policy period during which the injury or damage first occurs and no additional limits or coverage will be available for the 'occurrence' or offense under any additional years that this policy remains in force."[5] This provision also had an "Aggregate Limits" section under which "[t]he Limits of Insurance . . .

---

[1] Mots. – ECF Nos. 52, 54. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Stipulated Undisputed Facts – ECF No. 52-2 at 2 (¶ 1). The parties' Stipulated Undisputed Facts provide supporting summary-judgment evidence for each fact.

[3] *Id.* (¶ 2).

[4] *Id.* at 5 (¶ 3).

[5] *Id.* at 8 (¶ 5).

apply separately to each consecutive annual period and to any remaining period of less than 12 months."[6]

### 2. The Underlying Lawsuit

The plaintiff owns the property located at 1262 15th Avenue in San Francisco.[7] His tenant Rosa Cheung occupied one of the units there.[8] Ms. Cheung complained about mold in the unit in 2017 and 2019.[9] From June 2017 until June 2019, the combination smoke and carbon monoxide alarms in Ms. Cheung's unit were replaced three times because the alarms were "making noise."[10] One of those alarms was located above an in-wall natural-gas heater.[11] Each time the alarms were replaced, the plaintiff and Ms. Cheung believed they were defective.[12] In June 2019, the plaintiff installed an alarm that detected smoke only, allegedly by mistake.[13]

Following a 2018 repair of the natural-gas heater, Ms. Cheung "felt symptoms of daily fatigue and weakness."[14] "[T]he wall heater in [Ms.] Cheung's unit was vented horizontally, when vertical venting was required. The result was that some exhaust gas flowed into [Ms.] Cheung's residence."[15] This also meant that carbon monoxide was "vented into the structure."[16] In July 2019, after the erroneous installation of an alarm that did not detect carbon monoxide, Ms. Cheung

---

[6] *Id.* at 10 (¶ 5).

[7] *Id.* at 11 (¶ 8).

[8] *Id.* (¶ 9).

[9] *Id.* (¶ 11).

[10] *Id.* at 12 (¶ 17).

[11] *Id.* (¶ 14).

[12] *Id.* at 13 (¶ 18).

[13] *Id.* (¶¶ 20–21).

[14] *Id.* at 15 (¶ 28), 17 (¶ 37).

[15] *Id.* at 17 (¶ 38).

[16] *Id.* at 17–18 (¶ 39).

United States District Court
Northern District of California

United States District Court
Northern District of California

was hospitalized for acute carbon monoxide poisoning.[17] She later sued the plaintiff and the case settled for $1.2 million.[18]

### 3. Procedural History

The complaint has two claims: breach of contract and breach of the implied covenant of good faith and fair dealing.[19] It is undisputed that the court has diversity jurisdiction. 28 U.S.C. § 1332. All parties consented to magistrate-judge jurisdiction.[20] *Id.* § 636(c). The court held a hearing on January 18, 2024.

### STANDARD OF REVIEW

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only

---

[17] *Id.* at 11 (¶ 10).

[18] Lee Dep. – ECF No. 52-3 at 61 (p. 162:10–14).

[19] Compl. – ECF No. 1-1 at 7–14 (¶¶ 7–28).

[20] Consents – ECF Nos. 5, 7.

point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the non-moving party does not produce evidence to show a genuine issue of material fact, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

## ANALYSIS

### 1.  Legal Standard

"Because [the plaintiff] resided in California and the insurance contract was made in California, California substantive law governs this diversity action." *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001). In California, courts apply contract law to interpret insurance policies:

> Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636). Such intent is to be inferred, if possible, solely

from the written provisions of the contract. (*Id.*, § 1639). The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.) A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.

*MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647–48 (2003) (cleaned up). If the language is ambiguous or unclear, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1264–65 (1992). And if that rule fails to resolve the ambiguity, "courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *Powerline Oil Co. v. Super. Ct.*, 37 Cal. 4th 377, 391 (2005) (cleaned up).

## 2. Application

The main issue is whether the policy has an anti-stacking provision, because if so, the plaintiff is limited to the policy limit of one policy period even if Ms. Cheung's injury extended across multiple policy periods.

"'Stacking' generally refers to the stacking of policy limits across multiple policy periods that were on a particular risk." *California v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 200 (2012). "In other words, [s]tacking policy limits means that when more than one policy is triggered by an occurrence, each policy can be called upon to respond to the claim up to the full limits of the policy." *Id.* (cleaned up). But "an insurer may avoid stacking by specifically including an 'antistacking' provision in its policy." *Id.* at 202.

"Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insurer." *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 101–02 (1973) (cleaned up). And "[p]rovisions which purport to exclude coverage or substantially limit liability must be set forth in

United States District Court
Northern District of California

plain, clear and conspicuous language." *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 921 (1973).

The court grants the defendant's motion because the policy unambiguously prohibits stacking. The "Limits of Insurance" provision limited the plaintiff to $300,000 "for the policy period during which the injury or damage first occurs and no additional limits or coverage will be available for the 'occurrence' or offense under any additional years." This provision should be read in combination with the definition of "occurrence," which is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." These provisions mean that injuries occurring across multiple years result in coverage for only the first year.

The plaintiff relies on the "Aggregate Limits" section of the policy, under which "[t]he Limits of Insurance . . . apply separately to each consecutive annual period." *Atain Specialty Ins. Co. v. Sierra Pac. Mgmt. Co.*, No. 2:14-cv-00609-TLN-DB, 2016 WL 6568678, at *5 (E.D. Cal. Nov. 3, 2016) (same). According to the plaintiff, this provision contradicts the anti-stacking provision, thus creating ambiguity. But the two can be read together in a clear and understandable way: the limit on injuries spanning multiple policy periods applies separately to each policy period, i.e. the limit applies each time an injury "first occurs" during a policy period. And of course, an injury can "first occur[]" only once. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 341–42 (3d Cir. 2005) (reading an anti-stacking provision and an allegedly contradictory provision as consistent with each other); *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1132 (8th Cir. 2014) (holding that an anti-stacking provision is unambiguous where "[a]n ordinary reader would understand [the] prohibition").

The court thus grants summary judgment to the defendant on the breach-of-contract claim. And without a viable breach-of-contract claim, there can be no viable bad-faith claim. *See, e.g.*, *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995). The court grants summary judgment on that claim too.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

The court grants summary judgment to the defendant. This resolves ECF Nos. 52 and 54.

**IT IS SO ORDERED.**

Dated: February 26, 2024

_____
LAUREL BEELER
United States Magistrate Judge